UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRUCE L. ROTHROCK, SR.,                )
                                       )
         Appellant,                    )
                                       )
    v.                                 )    CV-10-41-P-W
                                       )
JOHN C. TURNER, Chapter 7 Trustee,     )
                                       )
         Appellee.                     )

**ORDER ON MOTION TO APPEAL**

Bruce Rothrock, Sr. appeals the bankruptcy court's conclusion that he did not have a perfected security interest in the proceeds of a merger.[1] Because the Court agrees that Mr. Rothrock did not have a perfected security interest and finds that a constructive trust is inappropriate, the Court affirms the bankruptcy court's grant of partial summary judgment.

**I.    STATEMENT OF FACTS**

In 2002, CrossHill Georgetown Capital LLP (CrossHill) loaned Parco Merged Media Corp. (Debtor or Parco) $600,000. CrossHill's loan was secured by a pledge of the Debtor's interest, *inter alia*, in 175,000 shares of stock in MultiSpectral Solution, Inc. (MSSI). In 2004, Mr. Rothrock purchased CrossHill's interest in the $600,000 loan to the Debtor, and he obtained possession of the Debtor's MSSI stock certificate as part of the collateral.[2] Mr. Rothrock retained possession of the stock certificate until mid-March 2008.

---

[1] In ordering judgment against Mr. Rothrock, the bankruptcy court specified that its decision "constitute[s] a final money judgment" pursuant to the Federal Rules of Civil Procedure 54(b). *Order on Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 47); Fed. R. Civ. P. 54(b) (specifying that judgment on fewer than all claims is generally not a final decision unless a court "direct[s] entry of a final judgment"). This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158, which specifies that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges."

[2] The Trustee disputes this finding; however, in ruling on the motion for summary judgment, the bankruptcy court accepted Mr. Rothrock's allegation that he obtained possession of the MSSI shares. On an appeal from summary judgment, the Court accepts this finding and recites this and other facts "in the light most hospitable to the

In early 2008, the Debtor received notice that holders who tendered their MSSI stock would receive a cash payout as part of a merger involving MSSI. In mid-March 2008, Scott Cohen contacted Mr. Rothrock and offered to submit the MSSI stock certificate to J.P. Morgan as part of the MSSI merger and stock redemption. At this time, Mr. Cohen was treasurer of the Debtor and Mr. Rothrock the chairman of its board of directors. Mr. Rothrock accepted the offer with the understanding that Mr. Cohen would act as his personal agent, not as an agent for the Debtor. The two men also agreed that the proceeds from the merger would be sent to a KeyBank account set up for that purpose. In March 2008, Mr. Rothrock physically delivered the stock certificate to Mr. Cohen.

On May 12, 2008, Mr. Cohen mailed the MSSI stock certificate to J.P. Morgan. The stock certificate identified Parco as the holder of the stock certificate and Mr. Cohen signed the transmittal form in his capacity as "Treasurer, Parco Merged Media Corp." *Letter of Transmittal* Attach B., 09-ap-2015, at 5 (Docket # 16). The transmittal form directed J.P. Morgan to submit the money to Parco, "the Holder listed on Box A," at the KeyBank account. *Id*. at 4. Nothing in the transmittal form communicated to J.P. Morgan that Mr. Rothrock had an interest in the MSSI stock certificate or that the funds were to be submitted to him.

On May 19, 2008, a petition for involuntary bankruptcy was filed against the Debtor. On May 21, 2008, a business bank account called "Escrow Account for CrossHill Loan" was set up at KeyBank to which Mr. Rothrock had sole signatory power. By check dated May 19, 2008, $295,470.26 in funds were paid to the Debtor care of KeyBank, and on May 23, 2008, this first installment of the merger proceeds was deposited in the KeyBank account. On May 28, Mr. Rothrock caused $295,170.26 to be wired from the KeyBank account to another account that he

---

appellant's theory of the case, consistent with record support." *Gillen v. Fallon Ambulance Service, Inc*., 283 F.3d 11, 17 (1st Cir. 2002).

owned personally, leaving $300 in the Debtor's KeyBank account. On July 16, 2008, an order for relief was entered against the Debtor and John C. Turner was appointed as Trustee to oversee the Debtor's estate.

On August 27, 2008, J.P. Morgan sent a second installment of funds, totaling $48,376.26 to the Debtor at KeyBank, and on September 5, 2008, $43,236.43 of these funds was deposited into the KeyBank account. The other $5,139.83 was withdrawn. On September 9, 2008, Mr. Rothrock transferred $43,236.46 by wire into his personal account.

On March 24, 2009, the Trustee initiated an adversary proceeding against Mr. Rothrock in federal bankruptcy court. *Compl.*, 09-ap-2015 (Docket # 1). The Trustee asserted six causes of action based on Mr. Rothrocks' transfer of the MSSI stock merger proceeds from the KeyBank account to his own personal account.[3]

On June 19, 2009, the Trustee moved for partial summary judgment. *Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 15). The Trustee claimed that as a matter of law the transfer constituted an unauthorized post-petition transaction and a willful violation of an automatic stay and sought judgment for the $338,408.72 that was removed plus interest. Mr. Rothrock responded on September 23, 2009. *Resp. in Opp'n to Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 29). The Trustee replied on October 2, 2009. *Reply to Resp. in Opp'n to Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 32).

On December 22, 2009, the bankruptcy court issued an oral order granting summary judgment on the unauthorized post-petition transfer claim but denying summary judgment on the willful violation of an automatic stay claim. *Oral Order*, 09-ap-2015 (Docket # 46); *Tr. of Oral Order* (Docket # 11). The bankruptcy court held that because the Debtor remained the registered

---

[3] The counts are unwinding the transfer as preferential, unauthorized post-petition transaction, willful violation of the automatic stay, breach of duty of loyalty, lack of good faith, and breach of duty of care. *Compl.*

holder of the MSSI stock and the transmittal form did not indicate that proceeds were to be paid to Mr. Rothrock, J.P. Morgan "possessed the stock certificate as agent[] of Parco thereby terminating Rothrock's perfection." *Tr. of Oral Order* at 9.[4] On December 29, 2009, the bankruptcy court issued a written order pursuant to its oral order and entered judgment against Mr. Rothrock for $338,408.72. *Order on Mot. for Partial Summ. J.* On January 8, 2010, Mr. Rothrock filed a notice of appeal in bankruptcy court, electing to appeal in district court. *Notice of Appeal*, 09-ap-2015 (Docket # 49); *Election to Appeal to District Court*, 09-ap-2015 (Docket # 50).

On February 1, 2010, Mr. Rothrock filed his appeal of the bankruptcy court's judgment in this Court. *Bankruptcy Appeal* (Docket # 1). Mr. Rothrock filed his appellant brief on March 2, 2010 and the Trustee responded on March 16, 2010. *Appellant Brief*; *Appellee Brief* (Docket # 12). Mr. Rothrock replied on March 30, 2010. *Reply Brief in Support of Appeal* (Docket # 13) (*Reply Brief*).

## II. DISCUSSION

### A. Standard of Review

The Court's review of a bankruptcy court's grant of summary judgment is *de novo*. *General Elec. Capital Corp. v. Ford Motor Credit Co.*, 149 B.R. 229, 231 (D. Me. 1992). The standard for summary judgment in an adversarial bankruptcy proceeding is the same as provided for by Rule 56(c). *In re Colarusso*, 382 F.3d 51, 58 (1st Cir. 2004); Fed. R. Bankr. P. 7056 (specifying that Fed. R. Civ. P. 56(c) applies in adversarial bankruptcy proceedings). When

---

[4] The bankruptcy court held in the alternative that summary judgment was appropriate because Mr. Cohen was acting as an agent for Parco. Mr. Rothrock objected to this alternate holding, arguing that that the bankruptcy court erred in finding, as a matter of law, "that Cohen was acting solely as the agent of Parco when he accepted the Stock Certificate from Rothrock in early 2008." *Appellant Brief* at 16 (Docket # 8). The Court does not address this alternate holding, assuming for purposes of summary judgment that Mr. Cohen was acting as an agent for Mr. Rothrock when Mr. Rothrock gave him the stock certificate.

4

deciding a motion for summary judgment, the Court construes the record in the light most favorable to Mr. Rothrock as the non-moving party. *In re Varrasso*, 37 F.3d 760, 763 (1st Cir. 1994). The Court must affirm the bankruptcy court's decision if "no genuine issue of material fact exists, and [the Trustee has] successfully demonstrated an entitlement to judgment as a matter of law." Fed. R. Civ. P. 56(c).

   B.     **The Parties' Positions**

       1.     **Mr. Rothrock**

Mr. Rothrock contends that he never lost his perfected security interest because J.P. Morgan was instructed to transfer the stock proceeds to him via the KeyBank account or, in the alternative, that his lack of perfection is due to fraud and "equity demands that a constructive trust be imposed on both on the Stock Certificate and its proceeds for Rothrock's benefit." *Appellant Brief* at 22. Mr. Rothrock argues that "the ownership of the KeyBank Account is clearly a relevant, disputed material fact" to whether he retained a perfected security interest. *Reply Brief* at 2. Because 11 M.R.S.A. § 9-1313(8)(b) provides that possession by a third party does not defeat the secured party's perfection if the third party is instructed "[t]o redeliver the collateral to the secured party," Mr. Rothrock frames the question as "to who that Account belonged to—Rothrock or Parco." *Appellant Brief* at 28. Mr. Rothrock concludes that if "the KeyBank Account was set up on Rothrock's behalf in his capacity as a secured creditor of Parco, . . . JPMorgan was instructed to return the collateral (cash) to the secured creditor (via the KeyBank Account) and § 9-1313(8)(b)" provisions are met. *Reply Brief* at 4.

In the alternative, Mr. Rothrock argues that if Mr. Cohen was acting for the Debtor when he transferred the MSSI stock certificate to J.P. Morgan, such a relationship is "contrary to the express representations made by Cohen to Rothrock." *Appellant Brief* at 20. Mr. Rothrock

5

contends that "where a debtor reacquires possession of collateral from a secured creditor by fraud, under false pretense, or as a result of other wrong doing, the secured creditor will not be deemed to have lost possession." *Id*. Mr. Rothrock argues that this fraud is more than a fiduciary dispute between him and Mr. Cohen because "black letter agency law makes Parco jointly liable for Cohen's wrongdoing." *Reply Brief* at 7. He says the Trustee "cannot have it both ways: he cannot argue on the one hand that that Cohen was the Debtor's agent such that Rothrock lost possession of the Stock Certificate per § 9-1313 and on the other claim that the Debtor is not vicariously liable for Cohen's tortious actions undertaken in his agency capacity." *Id*. at 8.

### 2. The Trustee

The Trustee responds that any perfected security interest that Mr. Rothrock might have had in the MSSI stock certificate was cut off when it was sent to J.P. Morgan. Although acknowledging the existence of exceptions by which a secured creditor does not relinquish possession by delivery to a third party, the Trustee contends that the conditions are not met: "Here, no instructions were given to JPMorgan which would satisfy the provisions of section 9-1313(8)." *Id*. at 15.

The Trustee also says that there is no precedent for imposing a constructive trust under similar circumstances and that equity does not favor its creation: "Rothrock's complaints center on his claim that his agent failed to do what Rothrock wanted him to do, but this is not an allegation that the Debtor did anything wrong sufficient to justify imposing a constructive trust." *Id*. at 21. The Trustee argues that "[i]f every secured creditor who was promised a perfected lien by a borrower could impose a constructive lien when the debtor/borrower failed to take steps to ensure the continued perfection of the secured creditor's lien, then no liens would ever be

6

avoided by a judicial lien creditor." *Id*. at 22. He concludes that Mr. Rothrock's claim of fraud is limited to a dispute between Mr. Rothrock and Mr. Cohen. *Id*. at 21-22.

### C. Whether Mr. Rothrock Had a Perfected Interest

The Court concludes that Mr. Rothrock lost his perfected interest when the Debtor came into possession of the stock certificate. "A security interest in a certificated security in registered form is perfected by delivery." 11 M.R.S.A. § 9-1313(5).[5] Section 8-1301 of the same chapter specifies that delivery occurs when "the purchaser acquires possession of the security certificate." Section 9-1313(5) further provides that this perfection is lost when "the debtor obtains possession of the security certificate." 11 M.R.S.A. § 9-1313(5); *see also* 11 M.R.S.A. § 9-1313, cmmt. 3 (stating that a debtor "cannot qualify as an agent for the secured party for purposes of the secured party's taking possession"). Here, Mr. Rothrock held a perfected interest for the period of time he possessed the stock certificate and for the period of time Mr. Cohen possessed the stock certificate on his behalf.[6] However, at the point that Mr. Cohen possessed and submitted the stock certificate on behalf of the Debtor, Mr. Rothrock lost his perfected interest. This point occurred at the latest on May 12, 2008, when Mr. Cohen endorsed the stock certificate as Treasurer of Parco and transmitted the certificate to J.P. Morgan with instructions

---

[5] The bankruptcy court applied Maine U.C.C. law, stating that "the Uniform Commercial Code is in all material respects uniform in connection with this dispute and the fact that Rothrock resided in Pennsylvania and Cohen in Oklahoma in connection with this—with these transactions really makes no difference. The code provisions don't vary from state to state." *Tr. of Oral Order* at 7. The parties did not object to the use of Maine U.C.C. law and the Court applies it.

[6] Although disputed by the Trustee, for purposes of summary judgment, the Court assumes that before March 2008, Mr. Rothrock had a perfected interest in the MSSI stock. 11 M.R.S.A. § 8-1303 (stating that delivery for perfection under § 9-1313 exists when "[t]he purchaser acquires possession of the security certificate"); *Aff. of Rothrock* Attach. 2, 09-ap-2015, ¶ 11 (Docket # 29) (stating that he had possession of the MSSI stock certificate from 2004 when he acquired the CrossHill loan collateral until 2008 when he gave the stock certificate to Mr. Cohen). The Court also assumes that Mr. Rothrock retained his perfected interest when the stock certificate was transferred to Mr. Cohen because Mr. Cohen possessed the stock certificate on behalf of Mr. Rothrock. 11 M.R.S.A. § 9-1313(8) (stating how perfection by possession is not lost by transfer to a third party if the third party is instructed to hold the collateral on the secured party's behalf; *Aff. of Rothrock* ¶¶ 16-21 (stating that he gave the stock certificate to Mr. Cohen with the express understanding that Mr. Cohen was holding the stock certificate on Mr. Rothrock's behalf).

to deposit the proceeds into a Parco account. In accordance with § 9-1313(5), Mr. Rothrock's security interest was extinguished when Parco "obtain[ed] possession of the security certificate."

Mr. Rothrock frames the question as whether the stock certificate was delivered first to Mr. Cohen and then to J.P. Morgan on his behalf. This argument is unavailing. There are two exceptions for when a secured party may retain possession despite delivery to a third party:

> A secured party having possession of collateral does not relinquish possession by delivering the collateral to a person other than the debtor . . . if the person was instructed before the delivery or is instructed contemporaneously with the delivery:
>
> **(a)** To hold possession of the collateral for the secured party's benefit; or
>
> **(b)** To redeliver the collateral to the secured party.

11 M.R.S.A. § 9-1313(8). Mr. Rothrock contends that the deliveries to Mr. Cohen and J.P. Morgan fit within these exceptions: his explicit delivery instructions to Mr. Cohen to possess the stock certificate on his behalf qualifies under § 9-1313(8)(a) and the instructions to J.P. Morgan to deliver the proceeds to the KeyBank account amounted to instructions to redeliver the collateral to him and qualifies under § 9-1313(8)(b).[7]

Mr. Rothrock's argument misses a critical step: Mr. Cohen took possession as treasurer of the Debtor when he signed the stock certificate as treasurer and transmitted it to J.P. Morgan on the Debtor's behalf, defeating Mr. Rothrock's interest in two ways. First, Mr. Rothrock lost perfection under § 9-1313(5) when the Debtor took possession. Second, when Mr. Cohen took

---

[7] Even though possession by the Debtor resolves the issue, the Court goes further because Mr. Rothrock has so energetically pressed his argument that the § 9-1313(8)(b) exception applies. For the § 9-1313(8)(b) to apply, the third party must have been "instructed" about the relevant information at or before delivery of the collateral. Here, no instructions were given to J.P. Morgan to transfer the money to Mr. Rothrock; the transmittal form clearly indicates that the merger proceeds were to be transmitted to the Debtor via the KeyBank account.

Whether Mr. Rothrock actually owned the KeyBank account does not address the focus under § 9-1313(8)(b); namely, the instructions given either before or contemporaneously with the transfer. The transmittal form instructs J.P. Morgan to deliver the proceeds to the Holder, identified earlier as Parco, at the KeyBank account. *Letter of Transmittal* Attach B at 4. The only means by which the proceeds could have been transferred to a non-holder—Box C, "Special Issuance and Payment Instructions"—was left blank. *Id*.

possession of the stock certificate on behalf of the Debtor, the exception under § 9-1313(8) no longer applied. Even if Mr. Cohen initially received the stock as an agent of Mr. Rothrock, when he signed the certificate and delivered the shares to J.P. Morgan Mr. Cohen was acting as an agent for the Debtor. It is true that Mr. Cohen's dual positions as personal agent and Parco treasurer obfuscate the transaction, but once Mr. Cohen changed hats and endorsed and mailed the certificate as the Parco treasurer, the transfer to Parco was complete and Mr. Rothrock's security interest in the stock thereby expired.

### D. Whether the Court Should Impose a Constructive Trust

In the alternative, Mr. Rothrock contends that if Mr. Cohen submitted the stock certificate to J.P. Morgan on behalf of the Debtor, his actions "are contrary to express representations made by Cohen to Rothrock." *Appellant Brief* at 20. Like other situations in which "a debtor reacquires possession of collateral from a secured creditor by fraud," Mr. Rothrock asserts that equity demands that the Court recognize a constructive trust in his favor. *Id*.

Implicit in Mr. Rothrock's argument, however, is the erroneous premise that Mr. Cohen *could* have tendered the stock to J.P. Morgan on Mr. Rothrock's behalf. Mr. Rothrock only held a perfected security interest in the MSSI stock, not title; even though Mr. Rothrock had possession of the stock certificate, the Debtor continued to be the registered holder of the certificate. When MSSI stock holders had the chance to tender their stock in exchange for cash, the Debtor alone had the authority to submit the stock certificate it owned, subject to Mr. Rothrock's security interest.[8] Regardless of Mr. Rothrock's instructions and Mr. Cohen's intentions, Mr. Cohen could only submit the stock certificate to J.P. Morgan as the Debtor's

---

[8] For example, the transmittal form specifies that "this Letter of Transmittal is to be completed by registered holders ("Holders") of stock certificates." *Letter of Transmittal* Attach B at 2.

agent. However, once the Debtor took possession of the certificate through its agent, Mr. Rothrock lost his perfected interest.

Even if Mr. Cohen was secretly acting as the Debtor's agent when he received the stock from Mr. Rothrock and as double agent he fraudulently misinformed Mr. Rothrock that he could submit the stock certificate to J.P. Morgan on Mr. Rothrock's behalf, it is a matter between Mr. Rothrock and Mr. Cohen. A constructive trust is not the appropriate remedy.

A constructive trust, in the form of constructive possession, is used to perfect security interests when courts have found that the bad behavior of the debtor "prevented the investor from perfecting his own position." *In re Atlantic Mortgage Corp.*, 69 B.R. 321, 331 (Bkrpt. E.D. Mich. 1987); *see also In re Bruce Farley Corp.*, 612 F.2d 1197, 1201 (9th Cir. 1980) (imposing a constructive trust when "the party was prevented from taking possession and thus perfecting his legal lien by the very wrongful detention which is the grounds for the claim for relief"); *Shapiro v. Family Bank of Hallandale*, 538 So. 2d 944, 945 (Fla. App. 3 Dist. 1989) (same). In contrast, it was impossible for Mr. Rothrock to both maintain a perfected interest in the MSSI stock certificate through possession and tender it to J.P. Morgan. The Court will not impose a constructive trust when even absent the alleged fraudulent behavior Mr. Rothrock could not have retained his perfected interest.

### III. CONCLUSION

The Court AFFIRMS the Bankruptcy Court's Order on Partial Motion for Summary Judgment, 09-ap-2015 (Docket # 47) and DENIES Mr. Rothrock's appeal (Docket # 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 2nd day of June, 2010