UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BRUCE L. ROTHROCK, SR.    )
                          )
        Appellant,        )
                          )
    v.                    )        CV-10-41-B-W
                          )
JOHN C. TURNER,           )
Chapter 7 Trustee         )
                          )
        Appellee.         )

## ORDER ON MOTION FOR RECONSIDERATION

Bruce L. Rothrock, Sr. moves pursuant to Federal Rules of Civil Procedure 59(e) and Federal Rules of Bankruptcy Procedure 8015 that the Court alter or amend its June 2, 2010 order upholding the bankruptcy court's grant of summary judgment. Because Mr. Rothrock advances new arguments not previously raised and the Court did not err in its previous order, the Court denies the motion for reconsideration.

## I.    STATEMENT OF FACTS[1]

In 2002, CrossHill Georgetown Capital LLP (CrossHill) loaned Parco Merged Media Corp. (Debtor or Parco) $600,000. CrossHill's loan was secured by a pledge of the Debtor's interest, *inter alia*, in 175,000 shares of stock in MultiSpectral Solution, Inc. (MSSI). In 2004, Mr. Rothrock purchased CrossHill's interest in the $600,000 loan to the Debtor, and he obtained possession of the Debtor's MSSI stock

---

[1] The Court detailed the relevant facts in its previous Order. *Order on Mot. to Appeal* (Docket # 17) (*Order*). Because the same facts are relevant to the current motion, the Court recites them again.

certificate as part of the collateral. Mr. Rothrock retained possession of the stock certificate until mid-March 2008.

In early 2008, the Debtor received notice that holders who tendered their MSSI stock would receive a cash payout as part of a merger involving MSSI. In mid-March 2008, Scott Cohen contacted Mr. Rothrock and offered to submit the MSSI stock certificate to J.P. Morgan as part of the MSSI merger and stock redemption. At this time, Mr. Cohen was treasurer of the Debtor and Mr. Rothrock the chairman of its board of directors. Mr. Rothrock accepted the offer with the understanding that Mr. Cohen would act as his personal agent, not as an agent for the Debtor. The two men also agreed that the proceeds from the merger would be sent to a KeyBank account set up for that purpose. In March 2008, Mr. Rothrock physically delivered the stock certificate to Mr. Cohen.

On May 12, 2008, Mr. Cohen mailed the MSSI stock certificate to J.P. Morgan. The stock certificate identified Parco as the holder of the stock certificate and Mr. Cohen signed the transmittal form in his capacity as "Treasurer, Parco Merged Media Corp." *Letter of Transmittal* Attach B., 09-ap-2015, at 5 (Docket # 16). The transmittal form directed J.P. Morgan to submit the money to Parco, "the Holder listed on Box A," at the KeyBank account. *Id*. at 4. Nothing in the transmittal form communicated to J.P. Morgan that Mr. Rothrock had an interest in the MSSI stock certificate or that the funds were to be submitted to him.

On May 19, 2008, a petition for involuntary bankruptcy was filed against the Debtor. On May 21, 2008, a business bank account called "Escrow Account for

CrossHill Loan" was set up at KeyBank to which Mr. Rothrock had sole signatory power. By check dated May 19, 2008, $295,470.26 in funds were paid to the Debtor care of KeyBank, and on May 23, 2008, this first installment of the merger proceeds was deposited in the KeyBank account. On May 28, Mr. Rothrock caused $295,170.26 to be wired from the KeyBank account to another account that he owned personally, leaving $300 in the Debtor's KeyBank account. On July 16, 2008, an order for relief was entered against the Debtor and John C. Turner was appointed as Trustee to oversee the Debtor's estate.

On August 27, 2008, J.P. Morgan sent a second installment of funds, totaling $48,376.26 to the Debtor at KeyBank, and on September 5, 2008, $43,236.43 of these funds was deposited into the KeyBank account. The other $5,139.83 was withdrawn. On September 9, 2008, Mr. Rothrock transferred $43,236.46 by wire into his personal account.

## A.  The Bankruptcy Court Action

On March 24, 2009, the Trustee initiated an adversary proceeding against Mr. Rothrock in federal bankruptcy court. *Compl.*, 09-ap-2015 (Docket # 1). The Trustee asserted six causes of action based on Mr. Rothrock's transfer of the MSSI stock merger proceeds from the KeyBank account to his own personal account.[2]

On June 19, 2009, the Trustee moved for partial summary judgment. *Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 15). The Trustee claimed that as a matter of law the transfer constituted an unauthorized post-petition transaction

---

[2] The counts are unwinding the transfer as preferential, unauthorized post-petition transaction, willful violation of the automatic stay, breach of duty of loyalty, lack of good faith, and breach of duty of care. *Compl.*

and a willful violation of an automatic stay and sought judgment for the $338,408.72 that was removed plus interest. Mr. Rothrock responded on September 23, 2009. *Resp. in Opp'n to Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 29). The Trustee replied on October 2, 2009. *Reply to Resp. in Opp'n to Mot. for Partial Summ. J.*, 09-ap-2015 (Docket # 32).

On December 22, 2009, the bankruptcy court issued an oral order granting summary judgment on the unauthorized post-petition transfer claim but denying summary judgment on the willful violation of an automatic stay claim. *Oral Order*, 09-ap-2015 (Docket # 46); *Tr. of Oral Order* (Docket # 11) (*Tr.*). Bankruptcy Judge Haines held that Mr. Rothrock's perfection was defeated when the stock certificate was submitted to J.P. Morgan by Mr. Cohen on behalf of the Debtor without any indication that it was submitted for the benefit of Mr. Rothrock. *Tr.* 9:2-22. In the alternative, Judge Haines held that Mr. Rothrock lost perfection because Mr. Cohen was acting as an agent for the Debtor when Mr. Rothrock gave his stock certificate to him. *Id.* 8:15-9:1.

On December 29, 2009, the bankruptcy court issued a written order pursuant to its oral order and entered judgment against Mr. Rothrock for $338,408.72. *Order on Mot. for Partial Summ. J.* On January 8, 2010, Mr. Rothrock filed a notice of appeal in bankruptcy court, electing to appeal in district court. *Notice of Appeal*, 09-ap-2015 (Docket # 49); *Election to Appeal to District Court*, 09-ap-2015 (Docket # 50).

### B.     The Motion to Appeal

On February 1, 2010, Mr. Rothrock filed his appeal of the bankruptcy court's judgment in this Court. *Bankruptcy Appeal* (Docket # 1). Mr. Rothrock filed his appellant brief on March 2, 2010, arguing that he never lost his perfected interest in the MSSI stock because both Mr. Cohen and J.P. Morgan held the stock on his behalf, and in the alternative, if Mr. Cohen was actually an agent for the Debtor, Mr. Rothrock lost perfection as a result of the Debtor's deception and the Court should set up a constructive trust in his favor. *Appellant Brief* (Docket # 8). The Trustee responded on March 16, 2010. *Appellee Brief* (Docket # 12). Mr. Rothrock replied on March 30, 2010. *Reply Brief in Support of Appeal* (Docket # 13) (*Reply Brief*).

On June 2, 2010, the Court denied Mr. Rothrock's appeal. *Order*. The Court held that Mr. Rothrock lost his perfection at the latest when Mr. Cohen submitted the stock certificate to J.P. Morgan on the Debtor's behalf. *Id*. at 8-9. Instead of the two-step process envisioned by Mr. Rothrock in which the stock certificate went from Mr. Cohen as agent of Mr. Rothrock directly to J.P. Morgan, the Court emphasized that the process actually involved three-steps. *Id*. Assuming for summary judgment that Mr. Cohen was initially acting as Mr. Rothrock's agent, the Court noted that Mr. Rothrock's version eliminated how the Debtor, through Mr. Cohen as its agent, transferred the stock certificate to J.P. Morgan. *Id*. Because a secured party's possession was negated by possession by the Debtor and the exception contained in § 9-1313(8) did not apply to possession by the Debtor, the Court concluded that Mr. Rothrock's perfection ended when Mr. Cohen submitted

the stock certificate to J.P. Morgan on behalf of the Debtor. *Id.* (citing 11 M.R.S.A. §§ 9-1313(5) and 9-1313(8)).

Furthermore, the Court held that Mr. Rothrock could not prevail on his constructive trust argument because the Debtor was required to submit the stock certificate to J.P. Morgan on its own behalf. *Id.* at 9-10. Assuming for summary judgment that Mr. Cohen's transfer of the stock certificate on behalf of the Debtor was not authorized by Mr. Rothrock and fraudulent, the Court found that a constructive trust was not justified because the bad behavior had not prevented perfection; Mr. Cohen could not have submitted the stock certificate to J.P. Morgan on behalf of Mr. Rothrock "even absent the alleged fraudulent behavior." *Id.* at 10.

### C. The Motion for Reconsideration

On June 14, 2010, Mr. Rothrock moved for reconsideration under both Federal Rule of Civil Procedure 59(e) and Federal Rule of Bankruptcy Procedure 8015. *Rothrock's Mot. Pursuant to Fed. R. Civ. P. 59(e) to Alter or Amend Order on Mot. to Appeal and for Rehearing Pursuant to Fed. R. Bankr. Proc. 8015* (Docket # 20) (*Rothrock's Mot. for Reconsideration*). On June 23, 2010, the Trustee responded. *Resp. in Opp'n to Mot. for Reconsideration* (Docket # 21) (*Trustee's Resp.*). On July 2, 2010, Mr. Rothrock replied. *Reply to Resp. in Opp'n to Mot. for Reconsideration* (Docket # 22) (*Rothrock's Reply*).

## II. DISCUSSION

### A. The Parties' Positions

#### 1. Mr. Rothrock

Mr. Rothrock contends "that this Court erred as to matters of law" when it did not consider the impact of 11 M.R.S.A. §§ 9-1312(7) and 9-1315(4)(b) on its decision. *Rothrock's Mot. for Reconsideration* at 1-3. Although implicitly acknowledging that neither provision was previously raised before the Court, Mr. Rothrock says that the Court's adoption of a new legal theory means that the prohibition against "initial consideration" in a Rule 59(e) Motion does not bar rehearing. *Id.* at 2 n.2 (quoting *Harley-Davidson Motor Co., Inc. v. Bank of New Eng.-Old Colony, N.A.*, 897 F.2d 611, 616 (1st Cir 1990)). Mr. Rothrock says, "If a new theory is adopted by the Court, then a motion for reconsideration or rehearing is an appropriate means to point out legal points not considered by the Court, which result in errors of law." *Rothrock's Reply* at 3.

Mr. Rothrock describes the "central thesis" of this Court's Order as that, pursuant to 11 M.R.S.A. § 9-1313(5), "Mr. Rothrock's perfected security interest in the stock certificate was lost when Cohen, who originally held the stock certificate for Mr. Rothrock, then became the Debtor's agent, endorsed the stock certificate, and transmitted the certificate to J. P. Morgan on May 12, 2008." *Rothrock's Mot. for Reconsideration* at 4. Without disputing the holding under § 9-1313(5), Mr. Rothrock asserts that the Court failed to additionally consider § 9-1312(7), which states that a perfected security interest "remains perfected for 20 days *without filing* if the secured party delivers the security certificate . . . **to the debtor** for the purpose of: **(a) . . . exchange**." *Id.* at 4 (emphasis added by Mr. Rothrock). Because the Court held that the "transfer of possession from Cohen, as agent for Mr.

Rothrock, to Cohen as agent for the Debtor" occurred on May 12, 2008, Mr. Rothrock concludes that his perfected interest was maintained during the exchange with J.P. Morgan because it occurred within the twenty-day window allowed by § 9-1312(7). *Id.* at 6. At the very least, Mr. Rothrock asserts that the Court's decision raises a factual question as to whether the transfer to the Debtor occurred within twenty-days of the stock exchange. *Rothrock's Reply* at 4-5.

As a corollary, Mr. Rothrock asserts that his perfected security interest was unaffected by J.P. Morgan depositing the cash proceeds from the stock exchange into a KeyBank account owned by the Debtor. *Rothrock's Mot. for Reconsideration* at 7.[3] Mr. Rothrock says that "the Court concluded . . . that because the exchange proceeds . . . were deposited in the KeyBank account, this resulted in Mr. Rothrock's security interest becoming unperfected." *Id.* Citing to 11 M.R.S.A. § 9-1315(4)(b)-(c), Mr. Rothrock asserts the Court erred because a perfected security interest in proceeds remains perfected if the proceeds either "remain identifiable proceeds" or "the security interest in proceeds becomes otherwise perfected within 20 days of becoming proceeds." *Id.* at 8 (internal quotations and citations omitted). He says that "both of these avenues are available" to him, *id.*, contending that his interest remained perfected under § 9-1315(4)(b) because "the proceeds are both cash and clearly identifiable—they were indisputably the only funds to flow to the KeyBank Account," *id.* at 9, and § 9-1315(4)(c) applies because he took "exclusive possession of the funds" by transferring them into his personal account within 20 days of the

---

[3] Mr. Rothrock concedes that for purposes of this motion, the KeyBank account was owned by the Debtor. *Rothrock's Mot. for Reconsideration* at 3 n.3.

stock exchange. *Id.* at 10. Putting the provisions of §§ 9-1312(7) and 9-1315 together, Mr. Rothrock argues that under § 9-1312(7) his security interest was fully perfect when the exchange occurred; under § 9-1315(3) his perfected security interest in the original collateral gave him a perfected interest in the proceeds; and under § 9-1315(4) his perfected interest in the proceeds continued indefinitely. *Id.* at 9-10. Because his perfected interest never lapsed, Mr. Rothrock concludes that "it never became subject to avoidance by the bankruptcy trustee." *Id.* at 10.

### 2. The Trustee

The Trustee responds that Mr. Rothrock's motion should be denied, since neither Rule 59(e) nor Bankruptcy Rule 8015 may be used to raise new arguments. *Trustee's Resp.* at 1.[4] Because Mr. Rothrock based his motion to appeal exclusively on 11 M.R.S.A. § 9-1313, the Trustee asserts that Mr. Rothrock cannot now introduce the provisions of 11 M.R.S.A. §§ 9-1312(7) and 9-1315 to ask for reconsideration. *Id.* at 3. The Trustee argues that not only did Mr. Rothrock fail to raise his § 9-1312(7) argument below but also his § 9-1313(8) argument precluded it: to maintain perfection under § 9-1313(8), Mr. Rothrock had to have given the stock certificate to his agent not the Debtor whereas under § 9-1312(7) the stock certificate must have been transferred to the Debtor. *Id.* at 6. The Trustee concludes that "[t]he conflicting positions can only be reconciled by accepting that

---

[4] The Trustee asserts that Bankruptcy Rule 8015 has the same procedural limitations as Rule 59(e). *Trustee's Resp.* at 8-9. The Trustee makes his arguments in the context of the Rule 59(e) motion and only mentions Rule 8015 to describe the ways it is similar to the limitations on Rule 59(e) motions. *Id.*

the Appellant seeks to drop his previous arguments and advance an entirely new theory of the case *via* a Rule 59(e) motion to amend." *Id*. at 7.

Furthermore, the Trustee contends that Mr. Rothrock's new legal theory is not justified by the Court's decision. Even assuming that reconsideration is warranted when a Court adopts a novel legal theory, the Trustee argues that the Court did not. *Id*. at 2-3. According to the Trustee, both the bankruptcy court and this Court "grounded their decisions upon the conclusion that Mr. Rothrock lost perfection in the stock certificate once it was turned over to the Debtor," *id*. at 3, and both concluded that this occurred "at the latest when the stock was delivered to JP Morgan." *Id*. at 5 (citing *Tr*. at 7-9 and *Order* at 7-9). The Trustee says that Mr. Rothrock's argument underscores the need to limit motions on reconsideration: Mr. Rothrock "made a tactical decision to argue an agency theory and continued perfection under § 9-1313. Now, with the benefit of language taken out of context, the Appellant wants to play 'gotcha' with the Court and the Trustee in an effort to get a second bite at perfection." *Id*. at 8. The Trustee concludes he cannot and should not get such a chance.

In the alternative, the Trustee gives two reasons why Mr. Rothrock loses under his new theory of the case. First, the Trustee contends that Mr. Rothrock's "theory depends upon the seizure of a single date, lifted without context from a prior Order, applied to an entirely new theory." *Id*. at 12. Although Mr. Rothrock is correct that this Court held that the Debtor came into possession "*at the latest* on May 12, 2008," *id*. at 9 (emphasis added by the Trustee) (quoting *Order* at 7), the

Trustee contends there is nothing "talismanic" about the date. *Id*. Instead, the Trustee emphasizes that "assuming, without deciding, a date for the purposes of § 9-1313 . . . is a far different matter than setting the starting date for the purposes of a provision with a date-certain countdown such as § 9-1312(7)." *Id*. at 11.

Second, the Trustee contends that the twenty-day time period cannot be triggered by Mr. Cohen as agent for Mr. Rothrock transferring the stock certificate to himself as agent for the Debtor. *Id*. at 13. Highlighting that the Official Comments to § 9-1312(7) starts the twenty-day time period "from the date a secured party who already has a perfected security interest *turns over* the collateral to the debtor," *id*. (emphasis added by the Trustee) (quoting § 9-1312(7) cmt. 9), the Trustee argues that the exception is triggered only by "the physical act of turning over the collateral to the debtor," not the fictitious transfer by Mr. Cohen to himself. *Id*. The Trustee finds support in the limited nature of the exception: Mr. Rothrock effectively tolls the twenty-day clock if he is allowed to transfer the stock certificate to Mr. Cohen in early March and yet still benefit from the § 9-1312(7) exception several months later. *Id*. at 12-13. The Trustee concludes that there is no legal support for "the position that a party may utilize an insider of the debtor to hold the stock certificate for months awaiting a planned merger transaction while indefinitely destroying the notice function served by perfection by tolling the twenty (20) day period of §9-1312." *Id*. at 14.

**B.    Rule 59(e) and Bankruptcy Rule 8015**

Mr. Rothrock moves for reconsideration under both Rule 59(e) and Bankruptcy Rule 8015. Although the First Circuit has not specifically addressed the correct procedural mechanism for reconsideration of district court bankruptcy appellate orders, it has upheld a district court decision that used Rule 8015. *In re Abijoe Realty Corp.*, 943 F.2d 121, 124 (1st Cir. 1991) (affirming district court denial of rehearing under Bankruptcy Rule 8015). Other circuits have held that "Bankruptcy Rule 8015 provides the sole mechanism for filing a motion for rehearing." *Matter of Trinity Bend Joint Venture*, No. 93-1454, 1994 WL 35591, at *1 (5th Cir. Jan. 26, 1994) (quoting *Matter of Butler, Inc.*, 2 F.3d 154, 155 (5th Cir. 1993)); *cf. In re Bli Farms, P'ship*, 465 F.3d 654, 655 (6th Cir. 2006) (endorsing the logic from *Matter of Butler*); *English-Speaking Union v. Johnson*, 353 F.3d 1013, 1019 (D.C. Cir. 2004) (same).

Rule 8015 provides that "a motion for rehearing may be filed within 14 days after entry of the judgment of the district court." Fed. R. Bankr. P. 8015. The Rule, however, "is silent as to the standard for granting such motions." *In re BuddyUSA, Inc.*, Nos. 1:03-CV-1038 (LEK), 1:03-CV-1039 (LEK), 2010 WL 1539720, at *1 (N.D.N.Y. April 19, 2010). The Advisory Committee Notes to Rule 8015 indicate that the rule was derived from Federal Rule of Appellate Procedure 40(a), which applies to petitions for appellate panel rehearings. Fed. R. Bankr. P. 8015 advisory comm. notes (stating that Rule 8015 "is an adaption of the first sentence of Rule 40(a) [Fed. R. App. P.]"). Thus, courts import the standard for granting motions for rehearing under Rule 40(a) to Rule 8015. *See, e.g., In re Fowler*, 394 F.3d 1208,

1214-15 (9th Cir. 2005); *McVay v. Otero*, 371 B.R. 190, 206-07 (W.D. Tex. 2007); *In re Carolina Tobacco Co.*, Appeal No. 06-1170-KI, 2007 WL 927940, at *1 (D. Or. Mar. 26, 2007); *In re Salvador B.*, No. 2:05-cv-1107-GEB, 2006 WL 3300770, at *1 (E.D. Cal. Nov. 14, 2006); *Frank v. Michigan*, No. 99-10333, 2000 WL 33351830, at *1 (E.D. Mich. Feb. 3, 2000); *In re Stoecker*, 179 B.R. 532, 540 (N.D. Ill. 1994); *Olsen v. United States*, 162 B.R. 831, 834 (D. Neb. 1993).

Rule 40(a) states that petitions pursuant to the rule must "state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended." Fed. R. App. P. 40(a)(2). It is well-established in the First Circuit that "a party may not raise new and additional matters for the first time in a petition for rehearing." *Johnson v. Mahoney*, 424 F.3d 83, 96 (1st Cir. 2005) (quoting *United States v. Bongiorno*, 110 F.3d 132, 133 (1st Cir. 1997)); *see also United States v. Padilla*, 415 F.3d 211, 218 (1st Cir. 2005); *Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1264 (1st Cir. 1993); *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1169 (1st Cir. 1991); *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 397 (1st Cir. 1990).[5]

### C.    Mr. Rothrock's New Legal Theory

---

[5] The parties focused their motions on Federal Rule of Civil Procedure 59(e). Even though the Court concludes that Rule 8015 governs the motion, there is not a material difference in the two standards. Like Rule 8015, motions to alter or amend under Rule 59(e) are "aimed at *re*consideration, not initial consideration." *Harley-Davidson Motor Co.*, 897 F.2d at 616. Parties cannot not use Rule 59(e) motions to "raise arguments which could, and should, have been made before judgment issued." *Fed. Deposit Ins. Corp. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (quoting *Harley-Davidson Motor Co.*, 897 F.2d at 616). Instead, to be granted, motions under Rule 59(e) must "either clearly establish a manifest error of law or must present newly discovered evidence." *Id.* (citing *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Mr. Rothrock uses his motion for reconsideration to advance a new legal theory. The premise of Mr. Rothrock's first motion was that he retained possession under § 9-1313(8) because the Debtor never possessed the stock certificate: Mr. Rothrock transferred the stock certificate to Mr. Cohen as Mr. Rothrock's agent and Mr. Cohen transferred the stock certificate to J.P. Morgan on Mr. Rothrock's behalf. *Appellant Brief* at 6.[6] If the Court found Mr. Cohen did not act exclusively as an agent for Mr. Rothrock, Mr. Rothrock asked the Court to establish a constructive trust for his benefit because Mr. Rothrock "was induced into surrendering the Stock Certificate under false pretenses." *Reply Brief* at 7.

Now, contrary to the factual premise of his prior argument both before the bankruptcy court and this Court, Mr. Rothrock asserts that he transferred the stock certificate to Mr. Cohen and Mr. Cohen, acting under his direction, transferred the stock to the Debtor on his behalf within twenty-days of the transfer from the Debtor to J.P. Morgan. *Rothrock's Mot. for Reconsideration* at 5-6. This is the type of "new and additional matters" that cannot be raised on rehearing. *Johnson v. Mahoney*, 424 F.3d 83, 96 (1st Cir. 2005).

Acknowledging that he is unable to present new legal theories in his motion, Mr. Rothrock posits two reasons why reconsideration is appropriate. First, Mr. Rothrock contends the Court should consider his new arguments because "the Court adopted as the basis for its decision grounds that were neither argued by either

---

[6] Mr. Rothrock also argued that the instructions to J.P. Morgan to deliver the proceeds to the KeyBank account amounted to instructions to redeliver the collateral to him and qualified the transaction under § 9-1313(8)(b). *Reply Brief* at 2. Although finding that possession ended the issue, the Court noted in a footnote that no instructions for redelivery were given to J.P. Morgan. *Order* at 8 n.7. Mr. Rothrock does not contest this holding in his motion for reconsideration.

party, nor addressed by the Bankruptcy Court." *Id.* at 2. In other words, Mr. Rothrock argues that because the Court adopted a novel theory, Rule 8015 allows the Court to entertain his. Mr. Rothrock is wrong that such an exception exists and wrong that the Court's holding was novel.

Rehearings are limited to when the court has overlooked or misapprehended a "point of law or fact." Fed. R. App. P. 40(a)(2). The emphasis is placed on the correctness of the holding, not its novelty. Mr. Rothrock provided no authority for the proposition that if a court decides a case on appeal on an issue not squarely raised by the parties, the court must reconsider its ruling upon request by the losing party and allow the presentation after the ruling of what was not presented before. As a general rule, the law places the burden on the parties, not on the courts, to raise all their arguments, not just some of them. *See Borden v. Sec'y of Health and Human Serv.*, 836 F.2d 4, 6 (1st Cir. 2002) (stating that the "[p]arties must take before the magistrate, not only their 'best shot' but all of their shots") (internal quotation marks and citation omitted). A party may not use a motion for reconsideration to "raise arguments which could, and should, have been made before judgment issued." *Fed. Deposit Ins.*, 978 F.2d at 16 (quoting *Harley-Davidson Motor Co.*, 897 F.2d at 616).

Occasionally a court may request that the parties submit memoranda on arguments that they failed to present or fully develop. But the court's resort to counsel for additional guidance is discretionary. When ruling, courts are expected to perform their own analyses and reach their own conclusions, and there is no requirement that the parties have an opportunity to respond whenever the courts

do not adopt as dispositive the legal arguments they raised. In the end, it is the court's view of what is decisive that must carry the day, not what the parties in their roles as advocates contend the law should say or what law should apply.

The rule Mr. Rothrock suggests would have pernicious consequences. Litigation would be without end: whenever a court cited a case not cited by the parties, phrased a conclusion not squarely presented, or ruled in an unexpected way, the parties would be encouraged to demand reconsideration. The disappointed litigant could scour the opinion for any variance between what was argued and what was decided, making motions for reconsideration the rule, not the exception. Furthermore, whenever a court viewed the dispositive issue differently than the parties, motion practice would become a two-step process: the first being the initial filings and the second being either a court-initiated rebriefing before the decision or a motion for reconsideration after it. If courts were strictly constrained to resolve cases solely on the arguments raised by counsel, the parties could restrict the decision-maker only to the issues they want to present, rather than the issues that the court upon reflection concludes are dispositive. Finally, faced with a losing argument, a party could wait in the wings, see if the court grasped the unmentioned issue, and spring into belated action, demanding reconsideration having gained the advantage of an advance ruling.

Even if such an exception existed, however, the Court's decision was not novel. Judge Haines reached two separate conclusions. First, he stated that, as "an alternate holding," Mr. Cohen was an agent for the Debtor at the time Mr. Rothrock

transferred the stock certificate to him.  *Tr.* 8:18-9:1.  Second, Judge Haines found that Mr. Rothrock lost perfection because "[p]ayment was delivered to Parco at a Parco account designed by Parco when it sent the certificates in through Cohen as Treasurer."  *Id*. 9:14-16.  Although the bankruptcy court did not specifically state that Mr. Cohen was initially an agent for Mr. Rothrock and only later became an agent for the Debtor, the implication of the alternative ruling is clear: even if Mr. Cohen was initially Mr. Rothrock's agent, at the time of the transfer to J.P. Morgan he was an agent for the Debtor.  Although Mr. Rothrock contends that the bankruptcy court never considered the possibility that Mr. Cohen switched allegiances, if the bankruptcy court had conclusively found that Mr. Cohen was an agent for the Debtor from the time Mr. Rothrock gave him the stock certificate, there would have been no alternate holding and no reason to discuss the facts surrounding the transfer to J.P. Morgan.  This Court merely made explicit what the bankruptcy court implicitly concluded.

Second, Mr. Rothrock contends that reconsideration is appropriate "to point out legal points not considered by the Court, which result in errors of law."  *Rothrock's Reply* at 3.  Mr. Rothrock asserts that "accepting the Court's conclusion" requires that "one must then consider the impact of Section 9-1312(7)."  *Rothrock's Mot. for Reconsideration* at 5.  Despite what Mr. Rothrock argues, however, this is not a question of the Court failing to consider the implications of its conclusion: Mr.

Rothrock must assert new facts to raise his new argument, something he could not have done in bankruptcy court and certainly cannot do on appeal.[7]

For the § 9-1312(7) exception to apply, Mr. Rothrock must have delivered the stock certificate to the Debtor. 11 M.R.S.A. § 9-1312(7) cmt. 9 (stating that "[t]he period of temporary perfection runs from the date a secured party . . . turns over the collateral to the debtor"). However, at summary judgment, Mr. Rothrock vehemently and consistently denied that such a delivery occurred. *See*, *e.g.*, *Def.'s Statement of Material Facts* Attach. 1, 09-ap-2015, ¶ 32 (Docket # 29) (stating that "[w]hen Cohen mailed the Stock Certificate, he did so in his capacity as a friend and agent of Rothrock and per Rothrock's express instructions"). Although the Court found that a delivery to the Debtor had in fact occurred, the Court accepted Mr. Rothrock's assertions and assumed that it had occurred without his consent. *Order* at 9-10 (discussing whether to impose a constructive trust after finding Mr. Cohen transferred the stock certificates on behalf of the Debtor). Having convinced the Court that he never intended to deliver the stock certificate to the Debtor, Mr.

---

[7] The Court views Mr. Rothrock's procedure as extraordinary. If a motion for reconsideration of a trial court ruling is based on new evidence, the movant must demonstrate that the new facts constitute "newly discovered evidence." *Prescott v. Higgins*, 538 F.3d 32, 45 (1st Cir. 2008) (quoting *Kansky v. Coca-Cola Bottling Co. of New Eng*., 492 F.3d 54, 60 (1st Cir. 2007)). Mr. Rockrock's "new facts" amount to a different spin on old facts and do not fit within the "newly discovered evidence" requirement.

More significantly, the "new facts" Mr. Rothrock now wishes to present contradict the "old facts" he placed before the bankruptcy court. This is troubling enough. But here the Court was acting as an appellate court in issuing its Order on Motion to Appeal. Thus, Mr. Rothrock seeks to alter the record on appeal after the Court's decision by presenting this Court with facts never considered by the bankruptcy court and never considered by this Court in its appellate ruling. Simply put, the Court will not allow Mr. Rothrock after it ruled on appeal to develop facts on appeal that he could have and should have developed below, especially when what he purveyed at bankruptcy court and before this Court is inconsistent with what he now insists is true.

Rothrock cannot now claim the Court erred when it did not consider an exception triggered by his delivering the collateral to the Debtor.[8]

### D.    Section 9-1312(7)

Even considering the applicability of § 9-1312(7) under the facts now alleged by Mr. Rothrock, the Court did not commit legal error.  Section 9-1312(7) provides that "[a] perfected security interest in a certificated security or instrument remains perfected for 20 days without filing if the secured party delivers the security certificate or instrument to the debtor for the purpose of . . . exchange." 11 M.R.S.A. § 9-1312(7).  Because the Court held that the transfer from Mr. Cohen as an agent for Mr. Rothrock to Mr. Cohen as an agent for the Debtor occurred at the latest on May 12, 2008, Mr. Rothrock argues that the transfer to J.P. Morgan might have occurred within twenty-days of the transfer from Mr. Rothrock to the Debtor, falling within the § 9-1312(7) exception.  *Rothrock's Reply* at 4-5.  At summary judgment, the Court was presented with two facts relevant to Mr. Cohen's agency: Mr. Rothrock claimed that Mr. Cohen was his exclusive agent in early-March and Mr. Cohen submitted the stock certificate to J.P. Morgan as an agent for the Debtor in mid-May.  Although willing to entertain the idea for purposes of summary judgment

---

[8] This conclusion is related to the equitable considerations behind the judicial estoppel doctrine. Judicial estoppel "prevents litigants from taking inconsistent positions in the same or a related case" in order "to protect the integrity of the judicial system from litigants playing fast and loose with the courts to obtain an unfair advantage. *Global NAPS, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 90-91 (1st Cir. 2010) (internal citations and quotations omitted).  Here, Mr. Rothrock argued and the Court assumed that he did not intend to transfer the stock certificate to the Debtor; he cannot now claim error by asserting a contrary factual scenario.  *Cf. Zedner v. United States*, 547 U.S. 489, 504 (2006) (stating that judicial estoppel applies when a party's later position is clearly inconsistent with its earlier position, the court adopted the party's earlier position, and the party would derive an unfair advantage from its inconsistent position).

that Mr. Cohen switched allegiances at some point within this period, the Court does not accept that this artificial transfer triggers the exception under § 9-1312(7).

The § 9-1312(7) exception is a limited one.  It is narrowly proscribed to a twenty-day period that runs from the time of transfer and is justified by its short-duration.  11 M.R.S.A. § 9-1312(7) cmt. 9 (forgiving the filing requirement because "no useful purpose would be served by cluttering the files with records of such exceedingly short term transactions").  Mr. Rothrock's formulation would enable parties to obfuscate the time of transfer, allowing the exception to swallow the rule.  Like Mr. Rothrock, secured parties could effectively toll the twenty-day time limit by transferring their stock certificates to agents of a company and then claiming that these agents were acting as their personal agents until the time of exchange.  To take advantage of the § 9-1312(7) exception, the Court concludes that an objectively verifiable transfer to the Debtor is required.[9]

In the first motion, the Court was concerned by Mr. Cohen's close connection to the Debtor and leery that Mr. Rothrock was attempting to exploit it.  The Court was mollified, however, by Mr. Rothrock's vehement assertions that Mr. Cohen acted exclusively as his agent.  Now, Mr. Rothrock attempts to take advantage of

---

[9] Such a requirement would also prevent a secured party from transferring their stock certificates to an agent of the debtor and then claiming after-the-fact that the agent initially acted as their personal agent.  Here, Mr. Cohen specifically denies that he received the stock certificate from Mr. Rothrock as Mr. Rothrock's personal agent.  *Aff. of Scott A. Cohen* Attach. 2, 09-ap-2015, ¶ 17 (Docket # 16).  Although the Court held that Mr. Rothrock's affidavit to the contrary created a question of fact as to whether Mr. Cohen was in fact his agent, *Order* at 7, 7 n.6, there was little chance for abuse because his perfection under § 9-1313(8) ended when the stock certificate was transferred to J.P. Morgan on behalf of the Debtor.  Allowing Mr. Rothrock's testimony to generate a question of fact also as to whether the § 9-1312(7) exception applies stretches the bankruptcy rules to their breaking point.  If Mr. Rothrock wishes to retain perfection despite possession by the Debtor, he must take additional steps to protect his interest.

Mr. Cohen's dual role by switching Mr. Cohen's allegiance as it benefits Mr. Rothrock. The simple answer is he cannot.

## III.   CONCLUSION

The Court DENIES Bruce L. Rothrock, Sr.'s Motion for Reconsideration (Docket # 20).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2010